# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
January 22, 2015

v

No. 318511
Wayne Circuit Court
LC No. 13-001977-FH

TRACIE MARIE CARTER,

Defendant-Appellant.

Before: DONOFRIO, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial conviction of arson of a dwelling house, MCL 750.72(1)(a).[1] She was sentenced to 30 to 240 months' imprisonment for her conviction. For the reasons set forth in this opinion, we affirm the conviction and sentence of defendant.

## I. BACKGROUND

This appeal arises from an apartment fire that occurred on July 9, 2012, at 11500 Chalmers Avenue, Detroit, Michigan. Defendant previously lived in Apartment 1 at that address, but she moved out two or three months before the fire, leaving behind "a sofa, a mattress, two end tables and [a] book shelf, and some miscellaneous trash." Though she had "moved out," defendant occasionally went to the apartment building. According to Latanya Burton, who previously lived in an apartment at 14411 Flanders, which was adjacent to 11500 Chalmers, defendant stated several months before the incident "that if anybody was in her apartment, she was going to set it on fire." Burton also acknowledged that she notified defendant a few days before the fire that it appeared that someone else had moved into Apartment 1 because lights were on in the unit.

On July 9, 2012, defendant returned to Apartment 1 and entered the unit after kicking in the door, or otherwise "busting through," the door. Brandon Ray, who lived upstairs, went to the top of the stairs and "asked who was kicking the door in. [Defendant] poked her head out and

---

[1] The offense at issue in this case occurred before the current version of MCL 750.72, first-degree arson, went into effect on April 3, 2013. Accordingly, all references to MCL 750.72 in this opinion refer to the version of the statute that was in effect prior to April 3, 2013.

said it's the owner of this apartment." When Ciera Jermon, who lived across the hall from Apartment 1, heard the noise, she opened the door to her own apartment and saw defendant in Apartment 1. Jermon had previously seen Rudolph Burgess in the apartment asleep on the couch, she did not hear any conversation between defendant and Burgess. After defendant entered the unit, Burgess went upstairs to Ray's apartment and did not return to Apartment 1. Jermon and Ray then heard the sound of breaking glass and could hear defendant loudly "cussing and stuff" "[be]cause people were in her apartment." At that time, Burton heard the sound of breaking glass and noticed that the window of Apartment 1 was broken, so she walked over to the unit. When Burton arrived, she saw defendant inside with a baseball bat in her hand, no one else was inside the apartment. Defendant gave Burton the end tables and bookshelf that she had left in her apartment, moving the bookshelf outside and setting it on the sidewalk. When defendant walked back in the direction of Apartment 1 after moving the furniture, Burton returned to her own apartment without seeing where defendant went.

Between 7 and 12 minutes after Burton initially heard the sound of breaking glass, defendant moved her car to Burton's apartment and sat with Burton on her porch, still carrying the baseball bat in her hand. When Jermon heard a car, which she thought was defendants, drive away from the apartment building very loudly, she went outside. Once outside, Jermon saw smoke coming out of the window of Apartment 1. She went inside and notified Ray, Burgess, and Ray's children that smoke was coming out of defendant's old unit, so they all exited the building.

Meanwhile, Burton and defendant were talking on Burton's porch, "a guy from the neighborhood pulled up," who did not live in the apartment building, "and blocked [defendant] in the driveway," asking defendant why "she set the building on fire."[2] Without saying anything, defendant entered her own vehicle, backed into the man's car, and drove away from the scene driving on the sidewalk for approximately a half block before moving onto the road. As defendant was getting into her car and driving away, Ray "ran out and . . . threw a crow bar at her car, and another car went across Chalmers after her[,] but they lost her."

After defendant left the scene, Ray called defendant and asked why she had set the building on fire. According to Ray, defendant replied, "[W]hy[,] you let somebody go in my apartment[.] [Y]ou know the rules of the game[.]"[3] [G]et it together." Jermon also called defendant after the incident and asked, "Why did you set the fire[?]" According to Jermon, defendant replied, "[W]ell, I did it, get with the program."

Lieutenant Dennis Richardson, a fire investigator for the city of Detroit, investigated the fire at issue in this case. After investigating the scene, he was able to determine that the "fire was started by the human hand," but he was unable to determine whether the fire was started intentionally or accidentally. However, after speaking to witnesses who lived at the apartment

---

[2] Burton later stated that the man asked, "*[D]id* [you] set the building on fire[?]" [Emphasis added].)

[3] Ray clarified on cross-examination that the "game" was probably "[defendant's] street game."

building, he concluded that "[t]he fire was caused by an intentional ignition of material on [the] mattress" and identified defendant as the suspect.

Defendant was convicted and sentenced as stated above. This appeal then ensued.

## II.   SUFFICIENCY OF THE EVIDENCE.

On appeal, defendant argues that there was insufficient evidence presented at trial to support her conviction. When a defendant challenges the sufficiency of the evidence on appeal, the trial court record is reviewed de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). This Court must determine whether a reasonable trier of fact could have found that the prosecution proved the essential elements of the crime beyond a reasonable doubt, reviewing the evidence in the light most favorable to the prosecution. *Id.* Additionally, our Supreme Court has stated that "[t]he standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

In order to sustain a conviction of defendant for the charged offense, arson of a dwelling house, the prosecution must prove three elements beyond a reasonable doubt: (1) defendant burned a building or structure, (2) the building or structure was a dwelling house, and (3) when defendant committed the act, she either intended to burn the dwelling or any of its contents, or she intentionally committed an act that she knew had a very significant risk of burning the dwelling or its contents and disregarded that risk. MCL 750.72; *Nowack*, 462 Mich at 409-410; *People v Barber*, 255 Mich App 288, 294-295; 659 NW2d 674 (2003). When the evidence only demonstrates that a fire occurred, there is a presumption that the fire was caused accidentally. *People v Lee*, 231 Mich 607, 612; 204 NW 742 (1925); *People v Williams*, 114 Mich App 186, 193; 318 NW2d 671 (1982); M Crim JI 31.1. However, "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Nowack*, 462 Mich at 400 (internal quotation marks and citation omitted). Likewise, the Michigan Supreme Court has recognized the fact that arson is rarely proven by direct evidence of the defendant's act of lighting a fire. *Id.* at 402. Instead, arson is usually proven by the inferences that the trier of fact draws from circumstantial evidence of the offense. *Id.* This circumstantial evidence "is often of a negative character," meaning that the criminal act is demonstrated by the absence of circumstantial evidence indicating that the fire was accidental. *Id.* at 402-403.

First, there was sufficient direct and circumstantial evidence presented at trial for a reasonable jury to find beyond a reasonable doubt, that defendant burned a building or structure. MCL 750.72; *Nowack*, 462 Mich at 409-410; *Barber*, 255 Mich App at 294-295. As previously stated, Brandon Ray testified that defendant provided the following response when he asked why she set the building on fire: "[W]hy[,] you let somebody go in my apartment[.] [Y]ou know the rules of the game[.] [G]et it together." Ciera Jermon also testified that defendant provided a similar reply when she asked defendant why she started the fire: "[W]ell, I did it, get with the program." Additionally, Ray, Jermon, and Burton all observed defendant in Apartment 1 immediately before the fire started. Further, the three witnesses' testimony provided circumstantial evidence that defendant was the only person in Apartment 1 in the minutes immediately before the fire: Burton only saw defendant in the apartment when she walked over

-3-

to the unit after hearing the sound of breaking glass, and Jermon and Ray testified that Burgess, who was in Apartment 1 prior to the incident, went upstairs to Ray's apartment when defendant entered the unit. Finally, Lieutenant Dennis Richardson concluded, based on his investigation that the fire was "started by the human hand," and he later determined that the mattress was intentionally set on fire based on the witnesses' observations that defendant exited the unit a few minutes before the fire was discovered, which suggested intent. He also stated, "Scientifically[,] it's not possible for a mattress to ignite and a person leave[s] [the room] and ten minutes later there's a fire without that person . . . knowing when they left [that] the fire occurred."

Second, there was sufficient evidence presented at trial for a reasonable jury to find beyond a reasonable doubt that the building or structure was a dwelling house. MCL 750.72; *Nowack*, 462 Mich at 409-410; *Barber*, 255 Mich App at 294-295. Ray, Burton, and Jermon each testified that several people, including Ray, Ray's children and Jermon, resided in the apartment building when the fire occurred.

Third, there was sufficient evidence to prove beyond a reasonable doubt that defendant either intended to burn the apartment or its contents, or she intentionally committed an act that she knew had a very significant risk of burning the dwelling or its contents and disregarded that risk. MCL 750.72; *Nowack*, 462 Mich at 409-410; *Barber*, 255 Mich App at 294-295. The witnesses' testimony established that defendant had a motive to set the apartment on fire. Burton testified that defendant stated several months before the incident that she would set the unit on fire if anyone was in it. Additionally, a few days prior to the incident, Burton informed defendant that it appeared that someone else had moved into Apartment 1 because lights were on in the unit. Likewise, when defendant arrived at Apartment 1 on July 9, 2012, she discovered Burgess inside the unit, and the witnesses all testified that it was evident that defendant was angry that someone was inside the unit because she was swearing and making statements regarding the fact that people were in "her" apartment. Additionally, the jury could infer that defendant rushed from the scene due to her consciousness of guilt based on the witnesses' testimony that defendant backed into a neighbor's car with her vehicle and sped away on the sidewalk after the neighbor asked her about the fire. Although the evidence also indicated that Ray attempted to throw a crowbar at defendant's vehicle as she was leaving, which may suggest that she drove away on the sidewalk in order to avoid harm to herself or her vehicle, this Court must "draw all reasonable inferences . . . in support of the jury verdict." *Nowack*, 462 Mich at 400. Therefore, given defendant's statements and behavior before, during, and after the incident, there was sufficient evidence in the record for the jury to find beyond a reasonable doubt that defendant intentionally started the fire in Apartment 1 because she discovered that someone was inside the unit. *Id*. Defendant's legal assertions to the contrary are without merit.

### III. GREAT WEIGHT OF THE EVIDENCE.

Second, defendant argues on appeal that her conviction was against the great weight of the evidence presented at trial. "[This Court] reviews for an abuse of discretion a trial court's grant or denial of a new trial on the ground that the verdict was against the great weight of the evidence." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). "A trial court may grant a motion for a new trial based on the great weight of the evidence only if the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id*.; see also MCR 6.431(B) ("On the defendant's motion, the court may order

-4-

a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice.") In general, a trial court may not grant a new trial on the basis of conflicting testimony in the record or doubts regarding the credibility of the witnesses, as the trier of fact must determine issues of witness credibility unless exceptional circumstances are present. *Unger*, 278 Mich App at 232. Accordingly, "a judge may not repudiate a jury verdict on the ground that he disbelieves the testimony of witnesses for the prevailing party." *People v Lemmon*, 456 Mich 625, 636; 576 NW2d 129 (1998) (internal quotation marks and citation omitted). However, our Supreme Court has recognized that the federal courts have identified a limited exception "to the rule that the trial court may not take the testimony away from the jury." *Id*. at 643. The federal courts have adopted the following tests to determine whether the exception applies:

> "if the testimony contradicts indisputable physical facts or laws, [w]here testimony is patently incredible or defies physical realities, [w]here a witness's testimony is material and is so inherently implausible that it could not be believed by a reasonable juror, or where the witnesses [sic] testimony has been seriously impeached and the case marked by uncertainties and discrepancies." [*Id*. at 643-644 (internal quotation marks and citations omitted; alterations in original)].

If a witness's credibility is seriously undermined based on one of the tests, a trial court may grant a new trial if there is a "real concern" that an innocent individual was wrongfully convicted of a crime—meaning that the credible evidence presented at trial "weighed more heavily in [the defendant's] favor than against it"—or if allowing the verdict to stand would constitute a manifest injustice. *Id*. at 644-645 (internal quotation marks and citation omitted; alteration in original).

Defendant asserts that the verdict was against the great weight of the evidence and constituted a miscarriage of justice because Richardson's testimony was "patently incredible," contradicted "physical facts," and "defied physical realities." The grounds for this argument are that Richardson was unable to conclude that an arson occurred but for Jermon's and Ray's assertions, and that the evidence presented at trial failed to demonstrate that defendant committed arson or that any crime occurred at all. Contrary to defendant's claims, Richardson's testimony does not "def[y] physical realities." Richardson explained how the physical evidence at the scene of the fire resulted in his conclusion that the fire was started either accidentally or intentionally by a human. Defendant does not and did not contest this conclusion. Additionally, Richardson explained that speaking to witnesses at the scene is a usual step in his investigation and explained how Jermon's and Ray's statements affected his conclusions. As such, there is no indication that Richardson's testimony was patently incredible, and it is within the province of the jury to determine the credibility of Richardson's and the other witnesses' testimony. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). Furthermore, apart from the fact that Richardson was initially unable to conclude whether the fire was accidental or intentional, no evidence was presented at trial that contradicted the witnesses' testimony, suggested that another individual started the fire, or otherwise suggested that the fire was accidental. Thus, the verdict essentially turned on the credibility of the testifying witnesses, which, again, is not a basis for granting a new trial absent exceptional circumstances. *Unger*, 278 Mich App at 232. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a new trial because there is no indication that the evidence presented at trial "preponderate[d] so

heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id.*

## IV. EXPERT TESTIMONY.

Next, in her Standard 4 brief, defendant argues that the trial court violated her due process rights and right to a fair trial by admitting expert testimony that was based on statements provided by witnesses and not based on scientific methodology. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1). Defense counsel did not object to the admission of Richardson's expert testimony, so this issue is not preserved for appeal. This Court reviews unpreserved evidentiary issues for plain error affecting the defendant's substantial rights, which requires a showing of prejudice, i.e., that the error affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763-764, 774; 597 NW2d 130 (1999); *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003).

Further, "the express approval of the trial court's action" constitutes waiver, which extinguishes a claim of error on appeal. *People v Loper*, 299 Mich App 451, 472; 830 NW2d 836 (2013). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *Carines*, 460 Mich at 762 n 7 (internal quotation marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (internal quotation marks and citation omitted). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's actions will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

Because defense counsel stated that defendant had no objection to Richardson's qualifications as an expert witness regarding the cause and origin of fires, defendant arguably has waived review of this issue. At trial, after defense counsel had an opportunity to ask a series of voir dire questions, she stated, "Okay, defense does not object to the qualifications of Lieutenant Dennis Richardson and [sic] cause and origin." It is clear from this statement that defense counsel expressly approved the trial court's conclusion that Richardson was qualified to provide expert testimony. Therefore, consistent with the principle that defense "[c]ounsel may not harbor error as an appellate parachute," *Carter*, 462 Mich at 214, defendant arguably waived review of the issue of whether the trial court properly admitted Richardson's expert testimony, *Kowalski*, 489 Mich at 503.

Nevertheless, even if defendant did not waive this issue, defendant failed to preserve this issue for review and failed to demonstrate that the admission of Richardson's testimony constituted a plain error that affected her substantial rights. *Coy*, 258 Mich App at 12. Pursuant to MRE 702, a trial court may admit expert testimony under the following circumstances:

> If the court determines that scientific, technical, or other specialized knowledge
> will assist the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill, experience, training, or

education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Our Supreme Court has stated, "[A] court evaluating proposed expert testimony must ensure that the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012). Thus, it is the trial court's responsibility to ensure that all expert testimony presented at trial is reliable and relevant. *Id*. However, given that "there are many different kinds of experts and expertise, this inquiry is, by necessity, a flexible one, and a court determining the admissibility of expert testimony may consider reliability factors pertinent to the particular type of expert testimony offered and its connection to the particular facts of the case." *Id*. Additionally, the facts or data on which an expert bases his or her opinion must be admitted into evidence. MRE 703.

The trial court allowed Richardson to provide his opinion as an expert regarding the cause and origin of the fire after the prosecution and the defense agreed that he was qualified to testify as an expert witness based on his training and experience, which included 7 years of experience as a firefighter, 10 years of experience as a fire investigator, specialized investigation training, certification by the National Association of Fire Investigators, and at least 50 certifications as an expert witness in the cause and origin of fires. During his testimony, Richardson explained in detail the fire investigation process, which includes examining the outside of a building, examining the inside of a building, determining the actual point of origin of the fire, and identifying a potential cause by detecting particular patterns and markings caused by the fire and searching for possible ignition sources. It also involves "canvas[sing] the area, talk[ing] to witnesses, [and] see[ing] if [he] can get a better indication of what happened before and what may have happened after [the] fire event." Additionally, when Richardson interviews witnesses, he seeks information such as whether the building or unit was occupied and, if so, when the occupant was last present.

When Richardson left the scene of the fire, he had only determined that a human had started the fire on the mattress in the bedroom; he was unable to confirm whether the act was accidental or intentional. However, he then learned from Jermon and Ray that someone had exited the structure a few minutes before the fire was discovered, which suggested intent. Thus, after talking to the witnesses, he determined that "[t]he mattress was intentionally lit or ignited," although he could not identify the ignition source. He found no indication that an accelerant was used to set the fire, but he testified that it was not necessary to find any signs of an accelerant in order to determine that the fire was intentionally set. He also confirmed that it was an acceptable practice in his industry "to rule a fire an incendiary fire [without] be[ing] able to identify if [the person who caused the fire] used a match or a lighter."

On appeal, defendant only challenges the fact that Richardson ultimately determined that the fire was intentional based on the statements provided by Jermon and Ray. Defendant asserts that this investigation method "is not reliable because it is untestable, and thus inconsistent with the scientific method." However, contrary to defendant's assertion, interviewing witnesses is an

accepted method of acquiring information during a fire investigation according to section 14.4 of National Fire Protection Association 921 ("NFPA 921"), which is a nationally recognized compilation of fire investigation guidelines. NFPA 921 states, "The purpose of any [witness] interview is to gather both useful and accurate information. Witnesses can provide such information about the fire and explosion incident *even if they were not eyewitnesses to the incident.*" NFPA 921 § 14.4.1 (emphasis added). However, "[i]t is the responsibility of the investigator to evaluate the quality of the data obtained from the witness at the time of the interview." NFPA 921 § 14.4.1.2. Thus, based on the national acceptance of witness interviews as a valid component of a fire investigation based in the scientific method, defendant is incorrect that Richardson's use of witness statements made his investigation inherently "speculative, unscientific, and unreliable," such that the trial court abused its discretion in allowing Richardson to provide his expert opinion at trial. *Kowalski*, 492 Mich at 120.

Additionally, defendant asserts that the trial court erred in admitting Richardson's testimony because the facts on which Richardson based his conclusions were not in evidence, since none of the evidence admitted at trial demonstrated that defendant possessed materials to light the fire or actually lit the fire. MRE 703. However, contrary to defendant's assertion, the physical facts and witness observations on which Richardson based his opinion were admitted into evidence because the trial court admitted numerous photographs depicting the condition of the apartment after the fire, which Richardson used to describe his observations and findings from the scene of the fire, and Jermon and Ray both testified at trial regarding their observations before and after the fire. Accordingly, even if we were to find that defendant has not waived this issue, defendant has failed to show that admission of Richardson's testimony affected her substantial rights. *Carines*, 460 Mich at 763-764.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL.

Next in her Standard 4 brief, defendant argues that defense counsel provided ineffective assistance by failing to object to the admission of, or request a *Daubert*[4] hearing regarding, Richardson's expert testimony and failing to request an arson expert. In order to preserve the issue of ineffective assistance of counsel, a defendant must move for a new trial or a *Ginther*[5] hearing at the trial court level. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). On appeal, defendant filed a motion to remand for an evidentiary hearing, but this Court denied defendant's motion, finding that defendant "has not demonstrated at this time that further factual development of the record or an initial decision of the trial court is necessary for this Court to review her issues on appeal."[6] Because defendant did not move in the trial court for a new trial or a *Ginther* hearing, this issue is not preserved on appeal.

---

[4] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

[5] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

[6] *People v Carter*, unpublished order of the Court of Appeals, entered September 15, 2014 (Docket No. 318511).

The right to effective assistance of counsel during a criminal trial is guaranteed by the United States and Michigan constitutions. US Const, Am VI; Const 1963, art 1, § 20; *Heft*, 299 Mich App at 80. Defendant bears a heavy burden of proving ineffective assistance of counsel because there is a strong presumption that defense counsel provided adequate representation. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). This Court may not substitute its own judgment for that of defense counsel or second-guess defense counsel on matters of trial strategy, as defense counsel has great discretion with respect to the trial tactics that he employs while trying a case. *People v Pickens*, 446 Mich 298, 330; 521 NW2d 797 (1994); *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

In order to prove that defense counsel failed to provide effective assistance of counsel, defendant must demonstrate that "(1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced defendant." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012). To establish that defense counsel's representation fell below an objective standard of reasonableness, defendant must show that counsel's conduct was outside the scope of professionally competent assistance under the circumstances. *Vaughn*, 491 Mich at 670. To prove that defense counsel's deficient performance prejudiced defendant, defendant must show that the outcome of the proceeding would have been different but for defense counsel's errors. *Heft*, 299 Mich App at 81. "[D]efendant must also show that the result that did occur was fundamentally unfair or unreliable." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

First, defense counsel did not provide ineffective assistance of counsel by failing to object to, or request a *Daubert* hearing regarding, Richardson's testimony. Richardson has extensive experience as a cause and origin expert. Given our prior finding that Richardson was qualified as an expert, any objection by defense counsel to his testifying in that capacity or to request a *Daubert* hearing would have been futile. Counsel cannot be expected to raise a meritless objection. *People v Ericksen*, 288 Mich App 192, 202; 793 NW2d 120 (2010).

Additionally, under the second prong of the test, defendant has failed to establish that there is a reasonable probability that the outcome of the proceeding would have been different but for defense counsel's failure to object to Richardson's testimony or request a *Daubert* hearing. *Heft*, 299 Mich App at 80-81. As discussed above, defense counsel extensively criticized and undercut the reliability of Richardson's expert opinion through her cross-examination questions and her closing argument, which essentially served the same purpose as an objection to his testimony and, in fact, may have been more likely to undermine the prosecution's case against defendant than merely objecting to Richardson's testimony or requesting a *Daubert* hearing. For this reason, defendant has failed to show that defendant was prejudiced by defense counsel's purported errors, *Heft*, 299 Mich App at 81, or that the result of the trial was fundamentally unfair or unreliable due to defense counsel's failure to object, *Lockett*, 295 Mich App at 187. Accordingly, defendant was not denied the effective assistance of counsel.

Second, defense counsel did not provide ineffective assistance of counsel by failing to request and retain an arson expert.[7]  Counsel's decision regarding whether to retain an expert witness is a matter of trial strategy.  *Payne*, 285 Mich App at 190.  Likewise, "[c]ounsel's decision whether to call a witness is presumed to be a strategic one for which this Court will not substitute its judgment." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Payne*, 285 Mich App at 190 (internal quotation marks and citation omitted).  A defendant must establish the factual predicate that defense counsel's failure to call such a witness denied her of a substantial defense.  *Ackerman*, 257 Mich App at 455.  A defendant has failed to establish this factual predicate when she "offers no proof that an expert witness would have testified favorably if called by the defense." *Id*.  If she fails to establish this factual predicate, she not established that there was a reasonable probability that the outcome of the proceeding would have been different but for defense counsel's error.  *Id*. at 455-456.

On appeal, defendant offers no proof that another expert witness would have testified in her favor.  Instead, she only offers the following conclusory statement in her brief:

> There is evidence in the record that another cause and origin expert would have determined that the fire was accidental[;] even Lieutenant Richardson determined after investigating the scene of the fire that the fire could have been caused accidentally.  [Defendant] has established a reasonable probability that but for counsel's failure to retain such an expert, the outcome of the trial would have been different.

Thus, defendant has failed to establish the factual predicate of her claim.  *Id*. at 455.  Further, as mentioned above, defense counsel extensively cross-examined Richardson regarding his findings and clearly established that the physical evidence in Apartment 1 only revealed that the fire "was started by the human hand," not whether the fire was accidental or intentional, and that Richardson only concluded that the fire was intentionally set after speaking with Jermon and Ray.  Thus, given that defense counsel plainly presented the defense that there was no direct or physical evidence demonstrating that defendant intentionally started the fire, there is no indication that defense counsel's failure to retain an arson expert was anything other than sound trial strategy, *id*., or that defense counsel's performance deprived defendant of a substantial defense, *Payne*, 285 Mich App at 190.  Accordingly, defendant has failed to establish that defense counsel's performance fell below an objective standard of reasonableness and that there

---

[7] As mentioned in defendant's Standard 4 brief, defense counsel requested "an investigator" at the motion hearing on May 1, 2013, and the trial court instructed defense counsel to "[s]ubmit an [o]rder."  Contrary to defendant's assertion on appeal, it appears that defense counsel did, in fact, submit an order appointing Joseph Bruce as the investigator in the case, which the trial court signed on May 6, 2013.  However, this order does not appear in the register of actions. Likewise, there is no indication that this private investigator was an arson expert or that defense counsel intended for him to testify as an arson expert at trial.

is a reasonable probability that the outcome of the trial would have been different but for defense counsel's failure to retain an arson expert. *Heft*, 299 Mich App at 80-81. Likewise, given that defendant was not deprived of the substantial defense that the fire was accidental and not an arson, defendant has not established that the result of the trial was fundamentally unfair or unreliable. *Lockett*, 295 Mich App at 187. Therefore, in light of the strong presumption that defense counsel provided adequate representation, *Vaughn*, 491 Mich at 60, defendant has failed to demonstrate that defense counsel's failure to retain an arson expert constituted ineffective assistance of counsel.

## VI. HEARSAY.

Next in her Standard 4 brief, defendant argues that the trial court improperly admitted an inadmissible hearsay statement that violated defendant's Sixth Amendment right of confrontation and defendant's due process rights. To preserve an argument that the trial court admitted evidence that was inadmissible hearsay, the defendant must object to the evidence at trial on that basis. *People v Jackson*, 292 Mich App 583, 594; 808 NW2d 541 (2011). However, a hearsay objection does not preserve for appeal an argument that the trial court's admission of the evidence violated the defendant's right of confrontation. *Id*. To preserve an issue based on the defendant's right of confrontation, the defendant must specifically object to the admission of the evidence on the ground that the statement violated the Confrontation Clause. *Id*. At trial, defense counsel objected to the out-of-court declarant's statement on the basis of inadmissible hearsay. Counsel did not object to the statement on the ground that it violated defendant's right of confrontation. Thus, the hearsay portion of the issue is preserved for appeal, but the right of confrontation portion of the issue is not preserved.

"The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion," which occurs "when the court's decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013) (internal quotation marks and citation omitted). This Court reviews de novo "[p]reliminary issues of law, including the interpretation of the rules of evidence and the effect of constitutional provisions." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

Likewise, this Court reviews de novo whether a defendant was denied her right to confront the witnesses against her. *Id*. However, when a defendant fails to preserve this constitutional issue, this Court only reviews the issue for plain error. *Carines*, 460 Mich at 763-764. To demonstrate such error, the defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 763. However, even if the defendant makes such a showing, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (internal quotation marks and citation omitted; second alteration in original).

At trial, defense counsel objected to the admission of Burton's testimony regarding the question that a neighbor directed at defendant, "[W]hy did [you] set the building on fire[?]," after

he blocked defendant's car in Burton's driveway. After a discussion on the record outside the presence of the jury regarding whether the man's question constituted inadmissible hearsay, the trial court concluded that the statement was admissible:

> So, as to the matter of the objection, first of all, part of the objection [is] that the conversation is not relevant. I find that the conversation is entirely relevant, and what appears to have happened here is that -- because I don't know the facts until I hear the witnesses, is that in the face of an accusation, the [d]efendant said nothing and drove away. Not only is that relevant, it's admissible and the objection is overruled.

After the trial court admitted the statement, Burton provided the following testimony:

> [*Prosecutor*]: Ma'am, you said that a gentleman from the neighborhood pulled up?
>
> [*Burton*]: Yes
>
> [*Prosecutor*]: And what happened then?
>
> [*Burton*]: He asked her did she set the building on fire. And she got in her car and backed into his [car], and pulled up [on] the sidewalk.

Defendant asserts that the admission of the neighbor's accusatory question was inadmissible hearsay because it was offered to prove the truth of the matter asserted, i.e., that defendant started the fire in the apartment. Hearsay is defined as "an unsworn, out-of-court statement that is offered to establish the truth of the matter asserted." *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007), citing MRE 801(c). Hearsay is generally inadmissible unless the statement falls under one of the exceptions recognized by the rules of evidence. *Id*., citing MRE 802. However, a statement that is offered to show the effect that it had on the listener, not for the truth of the matter asserted, does not constitute hearsay under MRE 801(c). *People v Fisher*, 449 Mich 441, 449-450; 537 NW2d 577 (1995); *People v Byrd*, 207 Mich App 599, 603; 525 NW2d 507 (1994). MRE 803(3) also provides an exception to the hearsay rule under which the trial court may admit an out-of-court statement that is offered to demonstrate "the declarant's then existing state of mind, emotion, sensation, or physical condition," but this exception only applies when the *declarant's* state of mind is at issue in the case. *People v White*, 401 Mich 482, 502-503; 257 NW2d 912 (1977), superseded by statute on other grounds as recognized by *People v Koonce*, 466 Mich 515, 520 (2002).

The trial court's decision to admit the neighbor's accusatory question in order to demonstrate its effect on defendant was not outside the range of reasonable and principled outcomes. *Duncan*, 494 Mich at 722-723. The prosecutor explicitly stated that the statement was not being offered to prove the truth of the matter asserted; instead, the prosecutor stated, and the trial court agreed, that the statement was being offered to "go[] toward the [d]efendant's state of mind," as it put defendant's conduct into context because "[i]t means nothing for [defendant] to back away if you don't know what happened right before." Accordingly, the statement was not inadmissible hearsay because it was being offered to show the effect of the neighbor's question on defendant. *Fisher*, 449 Mich at 449-450. This purpose was also reiterated by the

jury instruction, which was consistent with M Crim JI 4.4, provided by the trial court before the jury began its deliberations:

> There's been some evidence that the defendant ran away after the alleged crime. *This evidence does not prove guilt.* A person may run or hide for innocent reasons such as panic, mistake or fear. However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true and[,] if true[,] whether it shows the defendant had a guilty state of mind. [Emphasis added.]

Therefore, given that the neighbor's question was admitted to show its effect on defendant, which possibly revealed a consciousness of guilt, and not to prove the truth of the matter asserted, the trial court did not abuse its discretion in admitting the question. *Duncan*, 494 Mich at 722-723.

Additionally, defendant argues that the admission of the neighbor's question was extremely prejudicial and deprived her of a fair trial because "[t]here may have been another reason for [her] erratic departure from the scene, possibly fright, as [Burton] testified that [Ray] ran out and threw a crow bar at [defendant's] car, and another car went after her." However, this argument was alleviated by the jury instruction concerning the manner in which defendant left the area, which expressly stated that an individual may flee from a crime scene for an innocent reason such as fear. Defendant also asserts that the neighbor's question was inadmissible hearsay because the prosecutor later relied on it to prove the truth of the matter asserted during her closing argument. However, consistent with the use of the statement earlier in the trial, it appears from the transcript that the prosecutor repeated this statement in order to emphasize the effect of the neighbor's question on defendant—i.e., in response to his question, she got into her car, backed into the neighbor's car, and drove away on the sidewalk—not to prove the truth of the matter asserted, i.e., that defendant set the apartment on fire.

Furthermore, because the neighbor's question was not admitted for the truth of the matter asserted, the admission of this statement did not violate defendant's right to confrontation protected by the United States and Michigan constitutions. US Const, Am VI; Const 1963, art 1, § 20; *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012). The Confrontation Clause only applies to "statements used as substantive evidence." *Nunley*, 491 Mich at 697-698 (internal quotation marks and citation omitted). Accordingly, the admission of out-of-court, testimonial statements violates the Confrontation Clause unless the declarant is present at trial or the defendant had a prior opportunity to cross-examine the declarant. *Id*. However, the United States Supreme Court has stated that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v Washington*, 541 US 36, 59 n 9; 124 S Ct 1354; 158 L Ed 2d 177 (2004). As acknowledged by our Supreme Court, the United States Supreme Court has abstained from establishing a single definition of a testimonial statement. *Nunley*, 491 Mich at 698-699. However, it has recognized that testimonial statements include formal statements given to law enforcement officers, testimony provided in court or in an equivalent medium (e.g., affidavits, examinations performed while a declarant is in custody, and statements provided before trial that a declarant would expect to be used for prosecution), extrajudicial statements that are contained in formal testimonial materials (e.g., depositions and confessions), and statements made in

-13-

situations that would lead objective witnesses to reasonably assume that the statements would be "'available for use at a later trial.'" *Id*., quoting *Crawford*, 541 US at 52.

First, the trial court's admission of the neighbor's question did not infringe on defendant's right of confrontation because the statement was not testimonial in nature. *Id*. The neighbor informally pulled up behind defendant's vehicle and either asked defendant why she set the apartment on fire or whether she set the apartment on fire. There were no law enforcement personnel present when the neighbor asked the question, and given the circumstances of the situation, there is no indication that the neighbor would reasonably believe that his question, which was directed at defendant, would be a statement "'available for use at a later trial.'" *Id*. at 698, quoting *Crawford*, 541 US at 52. Second, even if the question was testimonial, the trial court's admission of the statement did not violate defendant's right to confrontation because the statement was offered in order to show the question's effect on defendant, not for the truth of the matter asserted. *Crawford*, 541 US at 59 n 9. Thus, there is no indication that the trial court's admission of the statement violated defendant's right to confrontation and constituted a plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

Affirmed.

/s/ Pat M. Donofrio
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens

-14-